HELEN E. BROOKS. The. See Case No. 6,330.

## Case No. 6,331.

### The HELEN J. HOLWAY.

### The ENOCH MOORE.

[6 Ben. 536.] [1]

District Court, S. D. New York. June, 1873.

COLLISION IN CHESAPEAKE BAY—SAILING VESSELS CROSSING—EVIDENCE—PLEADING.

1. Two schooners, the H. and the M., came in collision at night in Chesapeake Bay. The M. alleged that the wind was east-northeast and she was sailing south: that she saw both lights of the H. a little to windward of her course, coming up the bay, heading north, and close-hauled; that the M. ported, but the H., instead of keeping her course. as she was bound to do, starboarded and caused the collision. The H. alleged that the wind was north-northeast, and that she was heading northwest by north half north, close-hauled. and that the M. was coming down about south, on a course which would have carried her astern of the H., but she ported and caused the collision, and that the H. kept her course, as she was bound to do, till the collision was inevitable, when she ported, in order to ease the blow: Held, that the evidence from the H., that she was close-hauled, and as to her course by compass, was more reliable than that of the M., which was sailing free in any event.

2. The M. mistook the course of the H.

3. The courses of the vessels were crossing, and the case fell under the 12th and 18th rules,

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and the M. was bound to keep out of the way, and the H. was bound to keep her course.

4. On the pleadings, the M. could not claim that the H. was in fault for not porting.

5. The M. was responsible for the collision.

6. Whether, if the vessels had been meeting end on, or nearly so, the case would have been one requiring the H. to port her helm, quaere.

In admiralty.

A. J. Heath, for the Holway.

D. McMahon, for the Moore.

BLATCHFORD, District Judge. These are cross suits growing out of a collision which took place between the schooner Helen J. Holway and the schooner Enoch Moore, in the Chesapeake Bay, on the morning of the 10th of September, 1871, about half past four o'clock. The Moore was a vessel of 313 tons, and was deeply laden with coal, and was on a voyage from Georgetown, D. C., to the city of New York. The Holway was a vessel of 223 tons, and was not as deeply laden as the Moore, and was on a voyage from Boston, Massachusetts, to Georgetown, D. C. Both vessels were injured by the collision.

The libel of the Moore, which was filed on the 9th of October, 1871, alleges, that there was a fresh breeze from the east north-east; that the course of the Moore was south, by the compass; that she had the wind free; that the atmosphere was clear; that, at about twenty minutes past four o'clock a. m., a seaman on the lookout on the Moore, on her top-gallant forecastle, and the master of the Moore, who was walking on her port quarter-deck and was in charge of the deck, made the two colored lights of the Holway ahead, and a little to the windward of the course of the Moore, and between one and two miles off, the Holway heading up the bay, north, having about six points in which to make her course, and being otherwise close-hauled; that the master of the Moore, seeing that the Holway was sailing close-hauled, immediately gave the order to the helmsman of the Moore to port his helm, which was done, and the Moore swung off, and kept swinging off, on a hard a-port helm, until her foresail becalmed, which would be on a course west-southwest; that, in a few minutes, the Holway, instead of keeping her course, as she was bound to do, she being close-hauled, and when, if she had kept her course, no collision would have occurred, starboarded her helm, and kept hard away, and let her main sheet run off, and ran head on, or nearly so, into the Moore, at the port fore chains of the Moore, the Holway, at the time of the collision, heading about west; and that the collision was the result of negligence in the Holway, in not having a proper lookout forward, and in improperly starboarding her helm and letting her main sheet go, and in not having kept on her original course, as she was bound to do, she being close-hauled at the time, and in not being properly manned, her officers and master being below and asleep, and an incompetent mariner being in charge of her helm.

The answer of the Holway, which was filed on the 4th of June, 1872, avers, that, before and at the time of the collision, the Holway was beating up the bay against a strong breeze from the north-northeast, being before, and at the time of, the collision, close-hauled, on her starboard tack, heading about northwest by north half north, as near the wind as she would lie, and moving steadily along at the rate of four or five knots an hour; that, some time before the collision, the master and crew of the Holway discovered the Moore coming down the bay, under full sail, free, on her port tack, and with ample room to pass the Holway at a long distance on either hand, but nearing the Holway, and moving with great speed, heading about south, and across the track of the Holway, and on a course which, if steadily kept, would have carried her free and clear and astern of the Holway; that, when within about a ship's length of the Holway, and about three points off the Holway's starboard bow, the Moore suddenly ported her helm and kept away, and ran across the bows, and afoul, of the Holway; that, up to the instant of the collision, the Holway was close-hauled, on her starboard tack, keeping steadily her course by the wind, as she was bound to do; that, at the moment of the collision, when it was inevitable, she ported, to ease the blow; and that the collision was occasioned by the negligence of the Moore.

The libel of the Holway, which was filed on the 5th of August, 1872, contains the same averments as those above cited from her answer. The answer of the Moore, which was filed on the 4th of December, 1872, contains the same statement of circumstances as that above cited from her libel, except that her answer avers that she swung off on a port helm, while her libel avers that she swung off on a hard a-port helm.

There were on the deck of the Moore three persons, namely, Chambers, her master, and who was one of her owners; Collyer, a seaman, who was forward, on the lookout; and Wilson, a seaman, a Swede, who was at the helm. Chambers was examined orally at the trial. Collyer was examined by deposition on the 27th of November, 1872. Wilson was not examined. Warren, the mate of the Moore, who had been asleep below, and reached her deck just as the two vessels struck, was examined by deposition on the 5th of December, 1872. Thus, there are three witnesses from the Moore, two of whom were of the watch on deck.

There were on the deck of the Holway, her watch, consisting of two persons, namely, her mate, A. L. Thompson, who was forward on the lookout, and a seaman named Wilson, at the wheel. Her master, G. E. Thompson, and who was one of her owners,

had been below, but came on deck before the collision. The master and the mate, who are brothers, were examined by deposition on the 6th of August, 1872, and were also examined orally at the trial. They are the only witnesses from the Holway.

The only case set up by the Moore, in her pleadings, is, that the Holway, being close-hauled on her starboard tack, was bound to keep her course, but failed to do so, and, instead, starboarded, and so thwarted the efforts which the Moore made, by porting, to keep out of the way of the Holway.

There is a dispute as to the wind. The Moore insists that it was east-northeast, and that the Holway could lay her north course up the bay, having six points of wind in which to do so. In this view, the witnesses from the Moore say that they thought at the time that the Holway was on a north course. The Holway contends that the wind was north-northeast, and that she was heading northwest by north half north, thus heading four and a half points off the wind, and making really a northwest by north course, falling to leeward half a point, and unable to make her north course, having been beating and tacking, and sailing as close to the wind as she could. Whether the wind was north-northeast or east-northeast, it was free for the Moore, in either case, being either two points or six points abaft her beam, on her port side.

It is positively testified by those on the Holway, that she was as close-hauled as she could be; that her actual course by the compass, after the Moore was seen by her, and down to the moment before the collision, was northwest by north half north; that her helm was kept steady, and she was kept on the same course, because of the approach of the Moore, and under an order given with that view; that her helm was not starboarded; and that, when the collision was inevitable, her helm was ported, in order to prevent her being run over by the Moore, and to make the blow one of the stem of the Holway against the Moore. The testimony of witnesses from a sailing vessel, as to the course of such vessel, her being close-hauled or not, and her compass course, is much more reliable than the testimony thereto of witnesses from another vessel, which is herself sailing free. The evidence in this case has brought me to the conclusion, that the Moore mistook the course of the Holway. The Holway was really crossing the course of the Moore, at an angle of from two and a half to three points. The colored lights of both vessels were burning. The master of the Moore says that he saw both of the colored lights of the Holway a little off his port bow, and immediately ported, and that afterwards the Holway shut in her red light, her green light continuing visible. Admitting that, if the Moore was on a south course, and the Holway on a course northwest by north half

north, the Moore could not have seen the red light of the Holway, still, if one of the two conclusions must be reached, either that the red light of the Holway was not seen by the Moore, before the Moore ported, or that the Holway was not on a course northwest by north half north, the whole evidence makes it impossible to adopt the latter view. I conclude, therefore, that the case is one falling under the 12th rule. The two vessels were crossing, so as to involve risk of collision, and they had the wind on different sides, and the Moore having the wind free, on her port side, was bound to keep out of the way of the Holway, and the Holway was bound, by the 18th rule, to keep her course, and did keep her course. The pleadings of the Moore put the case as one of an observance by the Moore of the 12th rule, and a violation by the Holway of the 18th rule. They do not put the case as one under the 11th rule, where both of the vessels were bound to port, as meeting end on, or nearly end on. For, although the Moore sets up, in her pleadings, that she ported, and did right in porting, yet she does not set up therein that the Holway ought to have ported, and did wrong in not porting. On the contrary, the pleadings of the Moore assert that the Holway was close-hauled; that the master of the Moore saw that the Holway was close-hauled; that, because he so saw he ordered the helm of the Moore to be ported; that the Holway, being close-hauled, was bound to keep her course; and that, if she had kept her course, no collision would have occurred. This being so, the Moore, even if she were to establish that the vessels were meeting end on, could not be permitted to contend that it required porting by the Holway to prevent a collision. The Moore has affirmed in her pleadings, that an adherence by the Holway to her close-hauled course, combined with the porting done by the Moore, would have avoided a collision. It is not meant to be implied, by anything I have said, that, if the Holway had been heading north, close-hauled on her starboard tack, so that the vessels were meeting end on, or nearly so, so as to involve risk of collision, the case would have been one requiring the Holway to port her helm. It is certainly true, however, that where the Moore, in her pleadings, asserts, that, the Moore having ported, porting by the Holway was unnnecessary, to avoid a collision, the Moore cannot be heard to say that it was a fault in the Holway not to have ported, the Moore having ported.

The libel of the Moore must be dismissed, with costs. On the libel of the Holway, there must be a decree for the libellants, with costs, with a reference to a commissioner to ascertain the damages sustained by them.